JANA L., Plaintiff, v WEST 129TH STREET REALTY CORP. et al., Defendants, and WEST 129TH STREET REALTY Co., LLC, Appellant, and 408-412 WEST 129TH STREET ASSOCIATES, LLC, Respondent. [802 NYS2d 132]—

Order, Supreme Court, New York County (Edward H. Lehner, J.), entered February 24, 2005, which, to the extent appealed, denied the cross motion for summary judgment of defendant-appellant West 129th Street Realty Co., LLC (West Realty) on its cross claim for contractual indemnification against defendant-respondent 408-412 West 129th Street Associates, LLC (Associates), unanimously reversed, on the law, with costs, and the cross motion granted.

The underlying personal injury action was commenced by plaintiff Jana L. after she was assaulted by an intruder in her apartment on West 129th Street. The assault took place on January 25, 2001 at 12:30 P.M. Approximately 90 minutes later, ownership of the building in which the assault occurred passed from West Realty to Associates at a real estate closing which commenced at 2:00 P.M. and concluded at approximately 4:00 P.M. at law offices located in Lower Manhattan.

Plaintiff initially alleged that both sets of defendants were negligent and that they had violated sections of the Administrative Code of the City of New York by failing to provide adequate security in the apartment building. In answering plaintiff's second amended complaint, West Realty asserted a cross claim against Associates seeking contractual indemnification.

The claim was based on a provision in the purchase and sale agreement (Agreement) dated September 2000, by which West Realty contracted to sell the apartment building to Associates for $2.9 million. The provision in the Agreement, which set the date for closing as "on or before" January 30, 2001, was entitled "Indemnification" and provided, in relevant part, as follows: "Purchaser [Associates] shall indemnify and hold harmless Seller [West Realty] from any and all claims, losses, liabilities, costs, damages and expenses, including, but not limited to, court costs and reasonable attorneys' fees asserted against or incurred by Seller resulting from or arising out of the ownership, use or operation of the property on or subsequent to the Closing Date."

The closing was advanced to January 25, 2001, pursuant to an amendment, dated October 30, 2000, which also allowed for a reduction in the purchase price in the event of a closing before January 30. The record reflects that, pursuant to an assignment of leases agreement, Associates assumed all the duties and obligations of the landlord as of January 25, 2001; that Associates took out a general liability policy for the building providing coverage as of 12:01 A.M. on January 25, 2001; and that Associates posted notices on the premises directing tenants to call it with any building-related business occurring "on or after January 25, 2001."

Associates moved for summary judgment on June 25, 2004. Associates argued that since it did not own, possess, control, operate, manage or maintain the subject premises at the time of the assault, it had no relationship with the premises giving rise to any duty to plaintiff.

Subsequently, West Realty cross-moved for summary judgment arguing that Associates had expressly committed itself to indemnify West Realty for any liability resulting from any incident arising on or after the closing date of January 25, 2001. West Realty also relied on a provision in the Agreement that required allocations at the closing to be adjusted as of 11:59 P.M. on the date preceding the closing, that is, as of 11:59 P.M. on January 24, 2001.

Associates asserted that neither the indemnity provision, the agreement as a whole, nor the facts underlying the agreement evinced any intent of the parties to have Associates indemnify

West Realty *for its own negligence*. Associates further argued that the indemnity provision could be interpreted as indemnifying West Realty for the negligent acts of Associates committed between the time of closing and the end of the day; and that the indemnity provision was ambiguous as to whose "ownership, use or operation of the property" triggered the obligation thereunder.

Additionally, Associates claimed that its managing member, Joseph Tahl, was "completely unaware" of the assault prior to the closing, and that had he known that Associates would be held liable, Associates "would not have proceeded with the closing on the terms set forth in the contract."

Supreme Court dismissed plaintiff's complaint against Associates[1] but rejected Associates' argument that the indemnification provision did not expressly indemnify West Realty for its own negligence.

The court correctly determined that the indemnification provision was valid and applicable to the personal injury cause of action brought by plaintiff, and thus to the possible damages awarded for any negligence on the part of West Realty (*see Gross v Sweet*, 49 NY2d 102, 108 [1979] [exoneration clauses negotiated by sophisticated business entities can be viewed as merely allocating the risk of liability to third parties through the employment of insurance]). The court further took note of the fact that "financial adjustments made at closing pursuant to the contract treated Associates as the owner of the building on January 25" and that the insurance policy obtained by Associates provided coverage for that entire day. The court therefore properly determined that the parties intended for Associates to be protected by insurance, and held that an intention to indemnify a party against his own negligence was clearly implied from the language of the entire agreement and the surrounding circumstances (*see Margolin v New York Life Ins. Co.*, 32 NY2d 149, 153 [1973]).

Nevertheless, the motion court denied West Realty's motion for summary judgment, holding that a triable issue of fact was raised by the question of whether West Realty was aware of the assault prior to closing and failed to disclose this material fact to Associates, thus foreclosing Associates' option of adjourning the closing for a day to avoid liability.

---

1. Neither West Realty nor plaintiff, on appeal, seek to assert or offer any facts to show that Associates' liability arises out of the possession, ownership, control or operation of the building prior to closing. Plaintiff asserts only that Associates' liability arises out of the indemnity provision of the contract between West Realty and Associates.

We disagree and reverse, and, for the reasons set forth below, grant summary judgment to West Realty on its cross claim for contractual indemnification.

The motion court erred in denying West Realty conditional contractual indemnification. Its holding that a triable issue of fact exists as to whether West Realty knew and failed to disclose the assault was based on an incorrect assumption that West Realty had a duty to disclose that fact to Associates.

There simply is no legal basis for a determination that West Realty, even if it knew about the assault prior to closing, had any duty to disclose such fact to Associates. It is well established that, absent a fiduciary relationship between the parties, a duty to disclose arises only under the "special facts" doctrine where " ' "one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair" ' " (*Swersky v Dreyer & Traub*, 219 AD2d 321, 327 [1996], quoting *Beneficial Commercial Corp. v Murray Glick Datsun, Inc.*, 601 F Supp 770, 773 [SD NY 1985], quoting *Chiarella v United States*, 445 US 222, 248 [1980]; *see also P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V.*, 301 AD2d 373, 378 [2003]; *Strasser v Prudential Sec.*, 218 AD2d 526 [1995]).[2]

Defendants agree that no fiduciary relationship exists between them. Associates, however, asserts that the "special facts" doctrine is applicable to the instant case. Associates claims that West Realty, through its building superintendent, had "superior knowledge of essential facts" about an assault prior to the closing, which knowledge Associates did not possess. Associates further relies on the holding in *Strasser* (218 AD2d at 527) to assert that this "disparity in the level of information" resulted in it "for[ ]going action that might have otherwise been taken for its protection."

West Realty contends that Associates did take steps to protect itself when it purchased liability insurance for the entire day of January 25, 2001. West Realty maintains that, consequently, there was nothing "inherently unfair" about either the transaction where Associates signed off on the indemnification provision (months prior to any incident giving rise to liability) or the closing on the property after the assault occurred.

We find merit in West Realty's assertion that Associates agreed to the provision in September 2000 with the knowledge

---

**2.** In the cases cited, this Court has applied the "special facts" doctrine generally to causes of action that involve fraud. It is worth noting that in the case at bar, Associates makes no specific allegations that West Realty engaged in any fraudulent concealment or misrepresentation.

that its very purpose was to allocate responsibility should an incident giving rise to liability occur; and that the assault, in effect, turned a possibility which had been considered into an actuality against which Associates had protected itself.

In any event, Associates has misapplied the "special facts" doctrine to its case. As a threshold matter, the doctrine requires satisfaction of a two-prong test: that the material fact was information "peculiarly within [the] knowledge" of West Realty, and that the information was not such that could have been discovered by Associates through the " 'exercise of ordinary intelligence' " (*Black v Chittenden*, 69 NY2d 665, 669 [1986], quoting *Schumaker v Mather*, 133 NY 590, 596 [1892] ["[if] the other party has the means available to him of knowing . . . he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations"]).

Associates had, at the very least, a duty to inquire. If nothing else, the "exercise of ordinary intelligence" suggests a simple inquiry by Associates at closing as to whether West Realty had any knowledge of any incidents that might implicate the indemnification clause of the agreement signed by Associates. It is insufficient for Associates to simply make the conclusory statement that the information of an incident giving rise to liability "could not have been obtained [by it] through the exercise of ordinary intelligence."

The record, however, does not reveal any such inquiries. Instead, Associates relies on the holding in *Strasser* to claim that had it known of the incident and of West Realty's intention to apply the indemnification clause to its tort liability, then Associates would not have forgone the opportunity to protect itself and so "would not have proceeded with the closing on the terms set forth in the contract."

This claim belongs in the realm of speculation, and is of dubious legal merit. At the very outset, Associates would have to consider the possibility of forfeiting its deposit of $250,000 if it adjourned a "time is of the essence" closing in order to avoid the very responsibility it had contractually undertaken.

Ultimately, Associates' assertion that it was West Realty's duty to disclose the occurrence of the assault rather than Associates' duty to inquire as to its potential liability under the indemnification provision underscores the fact that the information was less "material" than Associates now purports it to be. Indeed, if any thought at all was given to the possibility of incidents that could give rise to Associates' liability on the day of closing, that thought occurred at the time the parties signed

the sale agreement in September 2000, as a result of which Associates obtained liability insurance for the entire day of January 25, 2001. Thus, any superior knowledge that West Realty had on the day of closing did not render this transaction "inherently unfair" because the indemnity provision was negotiated well before the claim giving rise to liability occurred, and Associates had already taken steps to protect itself against such contingency by taking out insurance effective as of 12:01 A.M. of the day of the closing.

Accordingly, we reverse the denial of summary judgment to defendant-appellant West Realty. We find, as a matter of law, that West Realty had no duty to disclose the fact of the assault to Associates, and thus grant summary judgment in favor of West Realty on its cross claim for contractual indemnification by Associates. Concur—Tom, J.P., Friedman, Gonzalez and Catterson, JJ. [*See* 6 Misc 3d 1026(A), 2005 NY Slip Op 50199(U) (2005).]