[7 NYS3d 1]

TIAA GLOBAL INVESTMENTS, LLC, et al., Respondents, v ONE ASTORIA SQUARE LLC et al., Appellants, et al., Defendants.

First Department, March 3, 2015

**APPEARANCES OF COUNSEL**

*Smith, Buss & Jacobs, LLP*, Yonkers (*Jeffrey D. Buss* and *Jennifer L. Stewart* of counsel), for appellants.

*Ingram Yuzek Gainen Carroll & Bertolotti, LLP*, New York City (*Robert Alan Banner* of counsel), for respondents.

**OPINION OF THE COURT**

MAZZARELLI, J.P.

On or about January 13, 2011 defendant One Astoria Square LLC (seller) and plaintiff TIAA Global Investments, LLC[1] entered into a contract for plaintiff to purchase a 115-apartment residential building for $43,000,000. The agreement expressly provided in sections 1.2 and 1.3 that plaintiff was not relying on any representations made by seller, other than those expressly made in article XIII of the agreement. Furthermore, the agreement stated in section 1.5 that

> "[e]xcept as specifically set forth to the contrary in this agreement or in the closing documents, [plaintiff] agrees (a) to take the property 'as is, where is, with all faults' and (b) that no representations are made or responsibilities assumed by Seller as to the condition of the property, as to the terms of any leases or other documents or as to any income, expense, operation or any other matter or thing affecting or relating to the property, now or on the closing date. Subject to and without limiting [plaintiff]'s rights under Article IX, [plaintiff] agrees to accept the property in the condition existing on the closing date, subject to all faults of every kind and nature whatsoever whether latent or patent and whether now or hereafter existing" (capitalization omitted).

---

1. TIAA Global subsequently assigned its rights in the property to plaintiff TCAM Core Property Fund Operating, LP.

Article XIII of the agreement contained seller's representations and warranties, on which, as noted, plaintiff was entitled to rely. Three of them are relevant here. The first, embodied in section 13.1 (c) of the agreement, stated that "[t]here are no actions, suits or proceedings (including arbitration proceedings) pending or, to Seller's knowledge, threatened against Seller which could have a material adverse effect on any portion of the Property, Seller's interest therein, the Leases or prevent Seller's ability to perform its obligations hereunder." The second representation at issue, set forth in section 13.1 (g), provided that "Seller has received no written notice of any claims, defenses or offsets by any tenant with respect to its Lease," and that seller had not received any notice of "any fact or circumstance which . . . could constitute a default by Seller as landlord." The third was found in section 13.1 (k), in which seller represented that "[t]o Seller's knowledge, all of the Property Documents delivered or made available by Seller to [plaintiff] in connection with the Property are true and complete copies of such items in Seller's possession which are used by Seller in the operation of the Property."

The one caveat to the article XIII representations was that, pursuant to section 13.2, plaintiff was not entitled to rely on any representation by seller "to the extent, prior to or at Closing, [plaintiff] shall have or obtain current, actual, conscious knowledge . . . of facts contradictory to such representation or warranty." In addition, section 13.2 gave plaintiff the exclusive remedy, upon learning of facts contradictory to any representation in article XIII, of terminating the agreement upon notice to seller and receiving back its down payment. If plaintiff elected not to terminate, it would "waive such breach and proceed to Closing with no adjustment in the Purchase Price and Seller shall have no further liability as to such matter thereafter." Section 13.6 provided that

> "[t]he express representations and warranties made in this Article by [plaintiff] or Seller will not merge into any instrument of conveyance delivered at the Closing; provided, however, that any action, suit or proceeding with respect to the truth, accuracy or completeness of any such representations and warranties . . . shall be commenced, if at all, on or before the date which is nine (9) months after the date of the Closing and, if not commenced on or before such date, thereafter will be void and of no force or effect."

Section 15.7 provided that if plaintiff did commence an action, its damages were limited to $750,000.

Plaintiff was entitled to perform due diligence before closing on the transaction. This was facilitated by the contract's requirement that seller provide plaintiff with a wide variety of documents related to the building, including tenants' lease files, major mechanical records and construction plans and specifications. Further, section 7.1 of the agreement provided, in pertinent part, that

> "[plaintiff] and its authorized agents or representatives were and shall be entitled to enter upon the Property and the Improvements during normal business hours upon advance written notice to Seller to make such investigations, studies and tests including, without limitation, surveys, engineering studies and environmental investigations (including a Phase I environmental site assessment), as [plaintiff] deems necessary or advisable (all investigations of the Property or any materials regarding the ownership, management, use or operation of the Property are herein collectively called the 'Property Investigations'). All investigations made by [plaintiff] have been and will be at [plaintiff]'s sole cost and expense and have been and will be performed without causing any damages to the Property that is not promptly repaired and without undue interference with the normal business operations of the Premises, including, without limitation, the rights of tenants at the Property. [Plaintiff] shall restore the Property in a timely manner at [plaintiff]'s sole cost to the condition that existed immediately prior to the Property Investigations."

Plaintiff retained defendant Levien-Rich Associates, Inc., an engineering firm, to conduct an investigation and to prepare a report regarding the condition of the property. The engineers advised that nearly $2 million of repairs would be necessary in the next 10 years, of which $620,700 worth was deemed of "immediate" necessity. The recommended "immediate" repairs related to the parking deck, Americans with Disabilities Act (ADA) compliance, and the public corridors and stairs, which were cold and required heating units. However, the report specifically stated that the property was "structurally sound,

and free of any conditions requiring continuing extraordinary maintenance."

To address the issues identified in the engineers' report, the parties entered into an amendment to the purchase and sale agreement pursuant to which seller agreed to reduce the purchase price by $496,753. Seller further agreed to place an additional $219,800 of the purchase price in escrow, payable to plaintiff unless seller performed such work necessary to remedy the issues within six months after the closing. The amendment also scheduled the closing for March 1, 2011. According to the complaint, on February 28, 2011, one of plaintiff's representatives was presented with a letter, signed by 35 tenants and dated January 26, 2011 (the tenant letter), which purportedly had been sent on that date to defendant The Criterion Group LLC, seller's property manager. The tenant letter complained of excessive heating bills, excessive air infiltration, and inadequate heating, as follows:

> "According to infrared thermometer readings, air entering through balcony doors and electrical sockets on upper floors was almost identical to outside air temperatures (subfreezing) despite heating units that were set to 65 degrees Fahrenheit. We believe this indicates a lack of appropriate insulation and sealing around windows and doors in the apartments. . . . In addition to cold wind blowing into the apartments, many of us have actually experienced small amounts of rain and snow entering the apartments through cracks around the balcony doors."

The next morning, prior to the closing that was scheduled for that day, plaintiff wrote to defendant Shibber Khan, seller's principal, inquiring about the high heating bills, which the tenant letter had asserted were a result of issues with the heating units and the apartment door/window assemblies. In an email sent later that day, Khan responded by stating that, "[i]n terms of the windows and insulation, everything is as per code and there is no excessive air penetration from the exterior of the building." On that same day, Khan provided a letter that he had procured from Mechanical Services, Inc. (MSI), a mechanical contractor that had been retained by Criterion, stating that the problem plaintiff had inquired about related

specifically to defective valves in PTAC mechanical units,[2] and that all necessary repairs had been made on February 16, 2011.

In light of the issues raised in the tenant letter, the parties executed an escrow agreement at closing, which provided that the escrow agent would retain $175,000 of the purchase price until seller conducted tests measuring the infiltration of air into the building, and performed any remedial work determined to be necessary. Plaintiff retained the right to recover the escrow funds if the work was not performed. Indeed, all escrow funds were released to plaintiff in May or June 2012.

After plaintiff gained control over the building, it came to suspect that the issues identified in its engineers' report and in the tenant letter were far worse than it had believed. This suspicion was partially fed by increasing complaints it received from tenants, as well as statements from tenants that seller had promised them rent abatements and the right to terminate leases without penalty as a result of the air infiltration. Plaintiff asserts that none of these complaints or promises was evident from the lease files seller was required to provide plaintiff prior to closing. Plaintiff retained Bone/Levine, an architectural firm, to perform a complete inspection of the building and to recommend solutions. Bone/Levine's reports, one issued in December 2011, nine months after closing, and another in July 2012, revealed that the air infiltration was due to problems far more fundamental than faulty valves in air-conditioning units. Rather, it reported, the building had been constructed in such a shoddy manner that, by plaintiff's description, it resembled "Swiss cheese" and was "hollow," due to a complete lack of insulation, and improper connections of vertical interior walls, which were not built slab-to-slab but had gaps between the Sheetrock and slab. Bone/Levine further reported that the building's construction was in significant violation of the fire code, as well as the ADA and the Fair Housing Act. Plaintiff claims it has spent millions of dollars to rectify these construction defects.

Plaintiff commenced this action in or about August 2012. In its complaint, plaintiff asserted a cause of action against seller for breach of contract, specifically, the representations contained in section 13.1 (c) (no pending or threatened lawsuits), (g) (no written notices of claims or defenses by tenants relating to their leases) and (k) (all property documents delivered are

---

2. Packaged terminal air conditioners.

true and complete). This claim was based on plaintiff's assertions that defendants failed to turn over correspondence with the tenants referring to the air infiltration issue. It alleged, upon information and belief, that the correspondence complained of conditions rendering the apartments uninhabitable, contained threats to sue over the matter, and reflected defendant's written assurances that it would grant rent abatements and other rent adjustments. Plaintiff also asserted causes of action for fraudulent concealment, fraudulent misrepresentation, and simple fraud against seller, Criterion, and Khan. These claims were primarily based on defendants' affirmatively stating, and encouraging MSI to state, that the air infiltration issue was due to a discrete issue that had been fixed before the closing. Although plaintiff alleged that Criterion and Khan directly participated in the fraud, it alternatively sought recovery against them on alter ego and successor in interest theories. It sought damages against all defendants in an amount of no less than $4,000,000.

Defendants seller, Criterion and Khan (defendants) moved to dismiss pursuant to CPLR 3211 (a) (1), (5) and (7). They argued that the complaint was barred by the doctrine of merger, which extinguishes any claims at the time of closing, and that any representations that the parties expressly stipulated to survive closing were unrelated to the causes of action. They further asserted that the action had been filed well past the nine-month statute of limitations provided for in the agreement. With respect to the fraudulent concealment, fraudulent misrepresentation and fraud causes of action, defendants contended that they were duplicative of the breach of contract claim, and that, in any event, plaintiff could not have reasonably relied on any of the alleged misrepresentations in light of the broad due diligence rights that were afforded to plaintiff. Defendants further argued that the fifth amendment to the contract of sale, as well as the escrow agreement executed at closing regarding the air infiltration issue, constituted an accord and satisfaction. Finally, defendants asserted that plaintiff alleged insufficient facts to support an alter ego theory against Criterion and Khan.

In opposition, plaintiff argued that defendants' reliance on provisions in the contract which made the transfer "as is," and which afforded plaintiff pre-closing inspection rights, was misguided, since the complaint alleged that seller's own intentionally misleading acts of concealment thwarted plaintiff's good faith efforts to ascertain the true condition of the

property. It posited that the merger doctrine did not apply, since the defects at issue were latent and could not have been discovered despite its best efforts during the due diligence period. It further contended that the fraud-based claims stood apart from the breach of contract claim, because the fraudulent misrepresentations were made in statements ancillary to the contract, such as the email from Khan on the day of the closing, and that they were made to induce plaintiff to enter into the contract and close on it, and so were not strictly redundant of the claim that seller breached the contract. Plaintiff also asserted that the contractual statute of limitations and limitation of liability clause should be set aside, since to hold otherwise would be to reward defendants for their malfeasance. With respect to the accord and satisfaction argument, plaintiff argued that its decision to accept escrow arrangements with respect to the air infiltration issue should not be used against it, since it did so based on facts defendants fraudulently led it to believe. Finally, plaintiff asserted that Khan and Criterion should bear full liability, since they were directly involved in the communication of fraudulent misrepresentations to it, and since Criterion exercised complete control over seller, and Khan in turn dominated Criterion.

The court denied defendants' motion in its entirety (2013 NY Slip Op 33857[U] [Sup Ct, NY County 2013]). It found that the "merger doctrine" did not bar the breach of contract claim because the complaint alleged latent defects, and that equitable tolling applied to the contractual limitations period based on "numerous facts relating to defendants' concealment and deceit" (id. at *7). With respect to the fraudulent concealment claim, the court found that plaintiffs' allegations that defendants actively concealed issues with the air infiltration system supported the claim that any attempt to discover latent defects had been thwarted. As for the fraudulent misrepresentation and fraud claims, the court found that plaintiffs' allegations were sufficient to reflect knowledge of facts peculiarly in the possession of defendants, and that issues of fact existed as to whether plaintiffs' due diligence efforts were sufficient and their reliance reasonable.

The court also found that plaintiffs' allegations that defendants made false extraneous representations designed to induce them to enter into the contract were not duplicative of their breach of contract claim, and that all of the indicia of a corporate veil piercing were sufficiently pleaded against Khan and Criterion.

We begin our discussion, as we often do in analyzing motions brought pursuant to CPLR 3211, by emphasizing that we must afford the pleading a liberal construction, accept the facts as alleged as true, and accord a plaintiff the benefit of every possible favorable inference (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]).

The merger doctrine in a real estate transaction provides that once the deed is delivered, its terms are all that survive and the purchaser is barred from prosecuting any claims arising out of the contract (*Ka Foon Lo v Curis*, 29 AD3d 525, 526 [2d Dept 2006]). The only exception to this rule is where the parties clearly intended that the particular provision of the contract supporting the claim would survive the delivery of the deed (*id.*). Further, an "as is" clause in a contract to sell real property will ordinarily bar a claim for breach of contract (*see Board of Mgrs. of the Chelsea 19 Condominium v Chelsea 19 Assoc.*, 73 AD3d 581, 581 [1st Dept 2010]). Plaintiff argues that the merger doctrine does not apply here because of the latent nature of the defects at issue. It further contends that its allegations of deceptive behavior on seller's part to mask the true condition of the building render the "as is" clause inoperable.

Although plaintiff cites trial court opinions identifying a latency exception to the merger doctrine, the concept has not been adopted by any of the Appellate Divisions or by the Court of Appeals (*see Arnold v Wilkins*, 61 AD3d 1236, 1237 [3d Dept 2009]), and we are not adopting it here. Nevertheless, the merger doctrine is inapplicable in this case. Although the crux of the action is undoubtedly that plaintiff took title to a seriously defective building, the specific allegations in the complaint are that seller breached the contract by failing to abide by those provisions designed to permit plaintiff to gain a true understanding of the condition of the property. As noted above, each of those representations was explicitly intended by the parties not to merge into the deed.

Further, since the breach of contract cause of action is addressed to these representations, and not to the condition of the building itself, the presence of the "as is" clause is no bar to the claim. Additionally, while the "as is" clause states that seller has made no representations as to "any other matter or

thing affecting or relating to the property," it carries the caveat that this is "[e]xcept as specifically set forth to the contrary in this agreement" (capitalization omitted). Thus, the three specific representations which plaintiff alleges were breached trump the "as is" clause. To the extent that plaintiff asserts fraud claims not directly related to the three surviving representations, the merger doctrine still does not apply (*West 90th Owners Corp. v Schlechter*, 137 AD2d 456, 459 [1st Dept 1988] ["fraud is a recognized exception to the merger doctrine"]).

Nevertheless, the breach of contract cause of action is time-barred. Initially, it is noted that the shortened limitations period provided in section 13.6 of the agreement only applies to seller's breach of any of the representations and warranties contained in article XIII of the agreement, except for several not at issue on appeal. Accordingly, this theory can only apply, if at all, to plaintiff's claim for breach of contract, not the entire action. Seller maintains that plaintiff was required to commence litigation no later than December 1, 2011, nine months after closing. Plaintiff counters that, due to defendants' active concealment, it did not discover that seller breached the three relevant representations until after the closing occurred, and that, under those circumstances, it is entitled to equitable tolling of the statute of limitations (*see Simcuski v Saeli*, 44 NY2d 442, 448-449 [1978]). However, any active concealment by defendants is only alleged to have thwarted plaintiff's ability to know that it had fraud-based claims based on the allegedly flawed construction of the building. This is irrelevant, because, as stated, defendants have no limitations defense on those claims. On the other hand, nowhere does plaintiff allege that defendants prevented it from becoming specifically aware, within the nine-month limitations period, of complaints from tenants about poor insulation in and around their apartments, or that documents memorializing those complaints existed. Since the breach of contract claim is based on those particular things, plaintiff has no excuse for not having timely interposed a breach of contract claim. As for the limitation of liability clause, we note that the complaint alleges sufficient allegations of fraudulent conduct on the part of seller such that, if proved, that clause would be unenforceable (*see Kalisch-Jarcho, Inc. v City of New York*, 58 NY2d 377, 384-385 [1983]; *Banc of Am. Sec. LLC v Solow Bldg. Co. II, L.L.C.*, 47 AD3d 239, 244 [1st Dept 2007]).

Defendants argue that plaintiff's fraud-based claims should be dismissed because they arise out of the same facts

supporting the breach of contract cause of action. It is true that, as held in the cases cited by defendants, one may not make as the basis for a fraud claim a representation in a contract that is later breached (*see Ka Foon Lo*, 29 AD3d at 526; *Crowley Mar. Assoc. v Nyconn Assoc.*, 292 AD2d 334, 334 [2d Dept 2002]). However, as plaintiff points out, it has alleged fraud arising not merely from contractual promises to perform at a later date, but rather from actionable misrepresentations of "then-present facts," such as the status of the air infiltration issue as expressed in Khan's email and in the MSI letter, each of which is alleged to have fraudulently induced plaintiff, on the very day of closing, to proceed (*Success, LLC v Stonehenge Capital Co., LLC*, 81 AD3d 478, 479 [1st Dept 2011]). Where

> "allegations of intentional fraud, though parallel in many respects to the breach of contract claim, include claims of fraudulent misrepresentations made by defendants which induced them to enter into the contract and close on the property, they are not merely redundant of the breach of contract claim . . . [and a] fraud cause of action is sustainable" (*Gizzi v Hall*, 300 AD2d 879, 880 [3d Dept 2002] [internal quotation marks and citation omitted]).

Defendants assert that, in any event, the fraud causes of action are unsustainable because the "as is" clause, coupled with the "no reliance" clause found in section 1.3, preclude plaintiff from claiming it was deceived by the Khan email, the letter from MSI, and other statements or omissions that defendants may have made to allegedly induce plaintiff to close. Indeed, a specific disclaimer of reliance on representations as to the condition of real property will ordinarily bar a fraud claim (*Danann Realty Corp. v Harris*, 5 NY2d 317, 320-321 [1959]). However, the *Danann* Court suggested that this is only the case where "the facts represented are not matters peculiarly within the [representing] party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation" (*id.* at 322 [internal quotation marks omitted]).

This "special facts doctrine" applies regardless of the level of sophistication of the parties (*see e.g. P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V.*, 301 AD2d 373, 378 [1st Dept 2003]). Further, it has been applied in circumstances remark-

ably similar to those here. In *Schooley v Mannion* (241 AD2d 677 [3d Dept 1997]), the plaintiffs purchased a nine-unit apartment building with an "as is" clause. After closing, the plaintiffs became aware of tenant complaints regarding freezing pipes and high electric bills. Upon investigation, they discovered that the building was not insulated in accordance with the manner in which the seller had represented it was (241 AD2d at 677). Although the plaintiffs did not, as plaintiff did here, specifically disclaim reliance on representations by the seller, the Court held that this did not matter, and denied the seller's motion to dismiss the plaintiffs' complaint for failure to state a cause of action, stating as follows:

> "[E]ven if the contract had contained specific disclaimers, the fact that the alleged defect regarding insulation was peculiarly within [the defendant]'s knowledge would be sufficient to salvage plaintiffs' cause of action. It is significant that [the defendant] is alleged to have recently gutted and renovated the entire property and that insulation is a nonvisible component, not easily verified without destructive testing" (*id.* at 678).

Defendants, as well as the dissent, argue that because of the broad due diligence rights that were afforded plaintiff in the agreement, knowledge of the defects was not "peculiarly within [their] knowledge." They emphasize section 7.1 of the agreement, which entitled plaintiff to undertake "such investigations, studies and tests including, without limitation, surveys, engineering studies and environmental investigations (including a Phase I environmental site assessment), as [plaintiff] deems necessary or advisable." Defendants characterize this as a "virtually unlimited right," but it is impossible to determine at this stage of the proceedings whether it would truly have been *practical* for plaintiff, prior to taking possession of the building, to do the requisite testing, some of it possibly destructive, that would have been necessary to reveal the alleged defects. After all, section 7.1 of the agreement also stipulated that "[a]ll investigations made by [plaintiff] . . . have been and will be performed without causing any damages to the Property that is not promptly repaired and without undue interference with the normal business operations of the Premises, including, without limitation, the rights of tenants at the Property." Defendants argue that plaintiff's engineers could have used infrared testing and/or a borescope to view the inner

construction of the building, but offer no support for that theory. Ultimately, the issue is one for a trier of fact, perhaps after the presentation of expert testimony.

■ The dissent argues that our conclusion is not supported by the record because it was not raised below. This position ignores the standard of review, however, which, as discussed above, is whether the complaint, which was obviously before the court, states a cause of action. Indeed, the complaint supports plaintiff's position that it could not have reasonably detected the alleged defects, insofar as it claims that the defects at issue "were not capable of being observed by Purchaser during its site observations." Plaintiff was under no obligation to make an evidentiary showing in support of that allegation, as the dissent implies it was (*see Rovello v Orofino Realty Co.*, 40 NY2d 633, 635 [1976]). That would only have been the case on a motion for summary judgment, or had the court converted this motion to one for summary judgment, which it did not (*id.*). Indeed, the relevant portion of *McPherson v Husbands* (54 AD3d 735 [2d Dept 2008]), cited by the dissent, was decided on summary judgment, and the Court found in favor of the seller only after observing that "the [purchasers] failed to submit any evidence showing that [the seller] or his agents thwarted [their] efforts to fulfill [their] responsibilities fixed by the doctrine of caveat emptor" (54 AD3d at 736 [internal quotation marks omitted] [first and second alterations added]). Further, the right to inspect in that case was, as reflected in the quote excerpted by the dissent, "without restriction as to length or scope of inspection" (*id.*), unlike here, where any "destructive" testing could only be performed if it did not unduly interfere "with the normal business operations of the Premises, including, without limitation, the rights of tenants at the Property."

■ We reject defendants' position that the complaint should be dismissed because, by executing the escrow agreements, plaintiff either waived its claims or entered into an accord and satisfaction. There is no basis at this stage of the proceeding for us to conclude that, in entering into the fifth amendment to the agreement and the escrow agreement executed at closing, plaintiff demonstrated the requisite intent necessary to waive all known claims against defendants (*see Smith v Guardian Life Ins. Co. of Am.*, 116 AD3d 1031, 1032 [2d Dept 2014], *lv denied* 24 NY3d 909 [2014]). To the contrary, those agreements were fashioned before plaintiff alleges it knew the full extent of

the defects in the building's construction. Similarly, an accord and satisfaction will only be found where there is a "clear manifestation of intent by the parties that the payment was made, and accepted, in full satisfaction of the claim" (*Rosenthal v Quadriga Art, Inc.*, 105 AD3d 507, 508 [1st Dept 2013] [internal quotation marks omitted]). No such manifestation is evident from the complaint or anything else in the record before us.

██ ██ Finally, defendants seek to dismiss the cause of action that is based on piercing the corporate veil. The corporate veil of a business entity may be pierced where a plaintiff sufficiently states "that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (*Shisgal v Brown*, 21 AD3d 845, 848 [1st Dept 2005] [internal quotation marks omitted]). Here, the complaint alleged that Khan is the managing member of seller and Criterion, that Criterion in turn was the "manager" of seller, that the proceeds of the sale were transferred to Criterion or Khan, and that Criterion abused the corporate form of seller by failing to reserve funds for the purpose of seller's contingent liability shortly after the closing and failing to follow any and all New York requisite corporate formalities in the governance and management of seller. The complaint further alleged that Criterion entered into the contracts for the design and construction of the property, managed the property, and made the decision, as the alter ego of seller, to conceal from plaintiff the tenant complaints and latent defects at issue in order to induce it to purchase the property. Plaintiff further alleged that Khan was integral to all of these events in his capacity as managing member of both Criterion and seller. We find that these allegations were sufficiently pleaded and that the court properly sustained the corporate veil cause of action. However, because the breach of contract cause of action is time-barred, so too is plaintiff's claim against Criterion and Khan based on successor liability (the seventh cause of action), which is expressly based on section 15.16 of the agreement. That section binds successors in interest to the "covenants and conditions of this Agreement." However, it also states that those same covenants and conditions "inure to the benefit" of successors. Accordingly, Criterion and Khan are also entitled to rely on the nine-month limitations period contained in section 13.6.

Finally, to the extent that we hold that Supreme Court properly denied defendants' motion to dismiss pursuant to

CPLR 3211 (a) (1) and (7), we stress once again the procedural posture in which we have received this case. We have been presented only with allegations in a complaint, and some documentation which, at this stage, fails to negate any of those allegations. The allegations are to be construed liberally, and assumed to be true, and plaintiff is to be afforded the benefit of every possible favorable inference (*Leon v Martinez*, 84 NY2d at 87-88). Having applied that standard, we find that, with the exception of those that are time-barred, plaintiff has sufficiently stated each and every cause of action in the complaint.

Accordingly, the order of the Supreme Court, New York County (Melvin L. Schweitzer, J.), entered April 26, 2013, which denied defendants One Astoria Square LLC, Shibber Khan and The Criterion Group LLC's motion to dismiss the complaint as against them, should be modified, on the law, to dismiss plaintiff's first and seventh causes of action, and otherwise affirmed, with costs.

DeGrasse, J. (dissenting in part). This appeal is from an order denying a motion to dismiss a fraudulent concealment cause of action, a fraudulent misrepresentation cause of action, and a simple fraud cause of action asserted against defendants One Astoria Square LLC, The Criterion Group LLC and Shibber Khan (collectively, the sellers). The order entered below also denied the branches of the motion by which the moving defendants also sought a dismissal of a breach of contract cause of action against One Astoria as well as a claim by which plaintiffs seek to pierce One Astoria's corporate veil. I respectfully dissent because the fraud causes of action should have been dismissed for failure to state a cause of action and on the ground of defenses founded upon documentary evidence. I agree with the majority, however, that the contract cause of action and the successor liability cause of action are time-barred. Finally, there exists no ground for piercing One Astoria's corporate veil because the claims against that entity are not viable.

This action stems from the sale of a 14-story apartment building pursuant to a January 13, 2011 purchase agreement between One Astoria, as seller, and plaintiff TIAA Global Investments, LLC, as purchaser. According to the complaint, Criterion was the manager of the property and Khan was the managing member of One Astoria as well as Criterion. The closing took place on March 1, 2011. By plaintiffs' account, their causes of action are based on the alleged fraudulent

concealment of "a massive problem with the air infiltration system resulting from major latent deficiencies at the property." Specifically, plaintiffs allege that "critical elements of the Property, such as insulation, fire walls and proper connection of vertical interior walls to slabs were virtually non-existent." Plaintiffs assert that these alleged defects were not discovered until after the closing. Controlling provisions of the purchase agreement are set forth as follows:

> "1.2 No Representations. Except for Seller's representations set forth in Article XIII,[1] . . . Seller makes no express or implied representation or warranty with respect to the Property.

> "1.3 No Reliance. Purchaser agrees that . . . Purchaser *is not relying* on and has not relied on any statements, promises, information or representations made or furnished by Seller or by any real estate broker, agent or any other person representing or purporting to represent Seller but rather *is relying solely on its own expertise and on the expertise of its consultants and on the inspections and investigations Purchaser and its consultants has or will conduct*" (emphasis added).

> "1.5 'AS IS'. EXCEPT AS SPECIFICALLY SET FORTH TO THE CONTRARY IN THIS AGREEMENT OR IN THE CLOSING DOCUMENTS, PURCHASER AGREES (A) TO TAKE THE PROPERTY 'AS IS, WHERE IS, WITH ALL FAULTS' AND (B) THAT NO REPRESENTATIONS ARE MADE OR RESPONSIBILITIES ASSUMED BY SELLER AS TO THE CONDITION OF THE PROPERTY . . . NOW OR ON THE CLOSING DATE. SUBJECT TO AND WITHOUT LIMITING PURCHASER'S RIGHTS UNDER ARTICLE IX,[2] PURCHASER AGREES TO ACCEPT THE PROPERTY IN THE CONDITION EXISTING ON THE CLOSING DATE, *SUBJECT TO ALL FAULTS OF EVERY KIND AND NATURE WHATSOEVER WHETHER LATENT OR PATENT* AND WHETHER NOW OR HEREAFTER EXISTING" (emphasis added).

---

**1.** Article XIII contains the representations and warranties that are the subject of the time-barred breach of contract cause of action.

**2.** Article IX, entitled "Risk of Loss," is not pertinent to this appeal.

Immediately after section 1.5, the purchase agreement provides:

> "Seller and Purchaser have agreed upon the Purchase Price relating to the Property and other provisions of this Agreement in contemplation and consideration of Purchaser's agreeing to the provisions of Sections 1.2, 1.3 . . . and 1.5, which Sections shall survive the Closing and the delivery of the Deed and/or termination of this Agreement."

The fraud causes of action are based on the following events that occurred shortly before the March 1, 2011 closing. On the day before the closing, plaintiffs' property manager received a letter dated January 26, 2011 that was addressed to Criterion and signed by 35 tenants of the building. As quoted in the majority opinion, the letter sets forth the tenants' complaints of excessive heating bills plus apparently faulty insulation that caused the infiltration of cold air and, in some cases, rain and snow into the apartments. On the morning of the closing, Henry Dong, plaintiffs' assistant secretary, contacted and forwarded the tenants' complaint letter to Khan.

The complaint alleges that Khan secured a letter dated March 1, 2011 from Mechanical Services, Inc. (MSI), a mechanical contractor. According to MSI's letter, the problem plaintiffs inquired about related to valves, and the necessary repairs were made on February 16, 2011. Khan forwarded MSI's letter to Dong and, in reply to the latter's email, also represented that "[i]n terms of the windows and insulation, everything is as per code and there is no excessive air penetration from the exterior of the building."

It is settled that justifiable reliance is an element of a cause of action based on fraudulent misrepresentation or fraudulent concealment (*see Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 178 [2011]). The complaint's core allegation supporting the fraudulent concealment and fraudulent misrepresentation claims is that

> "[p]urchaser relied upon the March 1, 2011 letter from Mechanical Services Inc. and the March 1, 2011 email from Khan and their representations that windows and insulation are per code, that there is no excessive air penetration and that all infiltration repairs were made on February 16, 2011 in deciding to go forward with the Closing later that day."

Plaintiffs' claim of justifiable reliance upon Khan's email and MSI's letter is precluded in every respect by section 1.3 of the purchase agreement, the "no reliance" clause.

This case is controlled by *Danann Realty Corp. v Harris* (5 NY2d 317 [1959]), which also involved a claim of fraud stemming from a real estate transaction. The issue identified by the Court in *Danann* was whether reliance upon alleged misrepresentations could possibly be established from the complaint read together with the underlying contract of sale (*id.* at 319). The contract in *Danann* contained an analogous recital that it was entered into with "*neither party relying upon any statement or representation,* not embodied in this contract, made by the other" (*id.* at 320). In finding that a fraud cause of action was not stated, the *Danann* Court held that "[s]uch a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon . . . contrary oral representations" (*id.* at 320-321). Accordingly, the "no reliance" clause precludes the fraud causes of action asserted against One Astoria, the contract vendor. Section 15.16 of the agreement provides that its covenants and conditions shall inure to the benefit of One Astoria's representatives. Therefore, the "no reliance" clause also requires dismissal of the fraud claims as asserted against Criterion, One Astoria's manager, and Khan, its managing member.

Although invoked by the majority, the "special facts" or "peculiar knowledge" doctrine has no application here. The standard that has been articulated by the Court of Appeals is as follows:

> " '[I]f the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations' " (*Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.,* 17 NY3d 269, 278-279 [2011], quoting *DDJ Mgt., LLC v Rhone Group L.L.C.,* 15 NY3d 147, 154 [2010]; *see also Danann,* 5 NY2d at 322).

Under the "special facts" doctrine, a duty to disclose arises where one party's superior knowledge of essential facts renders

a transaction without disclosure inherently unfair (*Jana L. v West 129th St. Realty Corp.*, 22 AD3d 274, 277 [1st Dept 2005] [internal quotation marks omitted]). For the doctrine to apply, plaintiffs must satisfy a two-prong test (*Jana L.*, 22 AD3d at 278). Under the first prong, plaintiffs must demonstrate that the undisclosed material fact was information peculiarly within the sellers' knowledge (*id.*). The second prong requires a showing that the information could not have been discovered by plaintiffs through the exercise of ordinary intelligence (*id.*).

The cases cited below demonstrate that plaintiffs cannot meet either prong of the "special facts" test, because the broad property investigations provision set forth under section 7.1 of the purchase agreement refutes any claim that information regarding the condition of the building was peculiarly within the sellers' knowledge. *McPherson v Husbands* (54 AD3d 735 [2d Dept 2008]) is on point. The fraud and contract claims in *McPherson* arose out of the plaintiffs' purchase of a house from the Husbands defendant (*id.* at 735). After closing, the plaintiffs discovered extensive termite damage and other defects throughout the house (*id.* at 736). In affirming an order granting the defendant's motion for summary judgment, the Second Department held that the defendant established his entitlement to judgment as a matter of law

> "by submitting an affidavit establishing that the premises were made fully available for inspection by the plaintiffs and their agents without restriction as to length or scope of inspection. *Under these circumstances, the facts represented were not matters peculiarly within the party's knowledge*, the plaintiffs had the means available to them of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, and as it was their responsibility to make use of those means, they will not be heard to complain that they were induced to enter into the transaction by misrepresentations" (*id.* [internal quotation marks omitted] [emphasis added]; *accord 85-87 Pitt St., LLC v 85-87 Pitt St. Realty Corp.*, 83 AD3d 446 [1st Dept 2011] [bug infestation held not to be peculiarly within a seller's knowledge where it could have been discovered with reasonable diligence and an inspection of the premises]; *Long v Fitzgerald*, 240 AD2d 971, 973 [3d Dept 1997] [sim-

ilar conclusion regarding damage caused by pest infestation]).[3]

In this case, section 7.1 of the agreement provided for inspections, including engineering studies, at TIAA's expense and upon advance written notice without undue interference with the building's normal business operations and the rights of tenants. The agreement simply required TIAA's prompt repair of damage caused by such inspections. Accordingly, it is undisputed that TIAA could have but failed to conduct destructive inspections at a cost that would have been added to the $42.5 million purchase price.[4] Plaintiffs were undoubtedly aware of their right to conduct such testing. Notably, upon forwarding the tenants' complaint letter to Mr. Khan, Mr. Dong wrote: "We received this correspondence late yesterday and are evaluating the situation to determine if we need to postpone the closing and do further testing of the building." Plaintiffs nonetheless closed the deal that same day. *Schooley v Mannion* (241 AD2d 677 [3d Dept 1997]), which the majority cites, is readily distinguishable because, as noted above, the purchase agreement before us provided for destructive testing. Nothing in *Schooley* suggests that the plaintiffs in that case had a similar contractual right.

The majority, however, concludes that it is impossible to determine at this stage whether it would have been practical for plaintiffs to do the requisite and possibly destructive testing prior to taking possession of the building. Although the majority has reached this conclusion, plaintiffs took no such position in the court below. Plaintiffs' only assertion regarding destructive testing is set forth in the answering affidavit of their chief engineer, who merely begged the question by stating that the building's alleged deficiencies "could only be ascertained by destructive testing." For purposes of this discussion, the majority's reliance upon the complaint's assertion that the building's defects "were not capable of being observed by

**3.** The principle articulated by the *McPherson* Court regarding the effect of a right to inspect is applicable notwithstanding the fact that *McPherson* involved an appeal from an order granting summary judgment. In any event, *Pitt St.*, like this case, involved a CPLR 3211 motion.

**4.** As stated in the complaint, TIAA engaged defendant Levien-Rich Associates, Inc. (LRA), a construction consulting firm, to "review the construction plans for general compliance with applicable codes, suitability of materials specified and for adequacy of the capacity of building systems for the Property's use." LRA furnished TIAA with its report on or about January 31, 2011.

Purchaser during its site observations" is also unavailing. Similarly, plaintiffs made no assertion that the "normal business hours" and "rights of tenants" conditions contained in section 7.1 prevented them from exercising their right to conduct destructive testing. This too does not address the sellers' documentary evidence that plaintiffs had, but did not avail themselves of, a contractual right to conduct destructive testing. In making this point, I do not seek to impose upon plaintiffs the burden of making an evidentiary showing. Mindful of the distinction between a CPLR 3211 motion and a motion for summary judgment, I confine my comments to the complaint's allegations and the documents proffered by the sellers (*see Rovello v Orofino Realty Co.*, 40 NY2d 633, 635 [1976]).

Under the breach of contract cause of action, plaintiffs allege that the sellers breached article XIII of the purchase agreement, which contains the sellers' representations and warranties regarding: pending or threatened suits or claims (§ 13.1 [c]); written notices of actual or potential tenants' claims, defenses or offsets (§ 13.1 [g]); and the accuracy and completeness of "property documents" that were delivered or made available to plaintiffs (§ 13.1 [k]). Section 13.6 of the agreement provided that any action or proceeding with respect to the accuracy or completeness of the foregoing representations and warranties had to be commenced within nine months of the date of closing. As the closing took place on March 1, 2011, the sellers made a prima facie showing that the contractual statute of limitations expired on December 1, 2011, more than eight months before this action was commenced (*see Texeria v BAB Nuclear Radiology, P.C.*, 43 AD3d 403, 405 [2d Dept 2007]). The burden then shifted to plaintiffs "to aver evidentiary facts establishing that [their] cause of action falls within an exception to the statute of limitations." (*Id.*)

The particular exception relied upon by plaintiffs involves principles of equitable estoppel by which "a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action" (*Simcuski v Saeli*, 44 NY2d 442, 448-449 [1978]). As the *Simcuski* Court held, "due diligence on the part of the plaintiff in bringing his action is an essential element for the applicability of the doctrine of equitable estoppel, to be demonstrated by the plaintiff when he seeks the shelter of the doctrine" (*id.* at 450). Accordingly, "the burden is

on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational" (*id.*). Plaintiffs in this case proffered no explanation as to how or even when they first learned of the sellers' alleged article XIII breaches (*see e.g. Commerce & Indus. Ins. Co. v Imrex Co.*, 270 AD2d 147 [1st Dept 2000]). Plaintiffs, who were in the best position to have this information, have failed to meet their burden under *Simcuski*.

Plaintiffs cite reports they received from Bone/Levine, an architectural firm, in December 2011 and July 2012. These reports do not bear upon plaintiffs' claim of equitable estoppel, because the statute of limitations applies only to the contract cause of action. The Bone/Levine reports relate solely to the fraud causes of action, because the reports were confined to the physical condition of the building. The reports do not address the specific representations and warranties that were contained in section 13.1 (c), (g) and (k) of the agreement. These representations and warranties form the sole basis of the contract cause of action.

As stated above, plaintiffs' causes of action against One Astoria should have been dismissed. Consequently, the claim by which plaintiffs seek to pierce its corporate veil should have likewise been dismissed. "[A]n attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141 [1993]). For the reasons stated by the majority, I agree that the escrow agreements executed at the closing did not constitute an accord and satisfaction. I would reverse the order entered below and grant the sellers' motion to dismiss the fraud causes of action pursuant to CPLR 3211 (a) (1) and (7), the breach of contract and successor liability causes of action pursuant to CPLR 3211 (a) (5), and the piercing the corporate veil claim pursuant to CPLR 3211 (a) (7).

ACOSTA and MANZANET-DANIELS, JJ., concur with MAZZARELLI, J.P.; DEGRASSE, J., dissents in part in a separate opinion.

Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered April 26, 2013, modified, on the law, to dismiss plaintiff's first and seventh causes of action, and otherwise affirmed, with costs.