19-2929
*Mariano v. CVI Investments, Inc. et al*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of April, two thousand twenty.

Present:
>            BARRINGTON D. PARKER
>            DEBRA ANN LIVINGSTON,
>            JOSEPH F. BIANCO,
>                  *Circuit Judges*,

_____

STEVEN M. MARIANO,

>            *Plaintiff-Appellant*,

GUARANTEE INSURANCE GROUP, INC.,

>            *Plaintiff,*

>      v.                                                                  19-2929

CVI INVESTMENTS INC., ALTO OPPORTUNITY
MASTER FUND, SPC,

>            *Defendants-Appellees,*

HUDSON BAY MASTER FUND LTD., EMILY CLIFFORD,

>            *Defendants.*

_____

1

For Plaintiff-Appellant:     IRWIN R. GILBERT, (Michael E. Dutko, Jr., *on the brief*), Conrad & Scherer LLP, Fort Lauderdale, FL

For Defendant-Appellee CVI:     M. NORMAN GOLDBERGER, (Laura E. Krabill, *on the brief*), Ballard Spahr LLP, Philadelphia, PA, (Marjorie J. Peerce, Ballard Spahr LLP, New York, NY *on the brief*)

For Defendant-Appellee Alto:     ARON FISCHER, (Stephanie Teplin, A. Robert Quirk, *on the brief*), Patterson Belknap Webb & Tyler LLP, New York, NY

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Steven M. Mariano ("Mariano") appeals from an August 12, 2019 final judgment of the United States District Court for the Southern District of New York (Daniels, *J.*) dismissing Mariano's fraudulent inducement and breach of contract claims against Defendants-Appellees CVI Investment Inc. and Alto Opportunity Master Fund, SPC (collectively "Funds"). Mariano's claims arise from a 2015 Private Investment in Public Equity ("PIPE") transaction through which the Funds, along with a non-party Hudson Bay Master Fund, Ltd. ("Hudson Bay"), invested in the stock of Mariano's business, Patriot National, Inc. Mariano claims that the Funds fraudulently induced him to enter into the transaction and breached the underlying agreements: a November 30, 2015 Non-Disclosure Agreement ("NDA"), which governed the Funds' use and disclosure of confidential information during the period when the PIPE transaction was under negotiation; a December 13, 2015 Securities Purchase Agreement ("SPA"), which set out the first set of terms under which the Funds would purchase shares and receive certain warrants from Patriot; and a December 23, 2015 Rescission and Exchange Agreement ("REA"), which contained

2

revised terms agreed on after Patriot's stock fell following disclosure of the PIPE transaction.[1]

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. Breach of Contract

We review a district court's grant of a motion to dismiss for failure to state a claim *de novo*, drawing all inferences in the plaintiff's favor and accepting all factual allegations as true. *Capital Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214, 219 (2d Cir. 2012).

On appeal, Mariano argues that the Funds violated the NDA by using non-public information prior to the public disclosure of the PIPE transaction. However, the SPA, a later and more detailed agreement covering the exact same subject matter, supersedes the NDA by virtue of the SPA's merger clause specifying that the SPA "supersede[s] all other prior oral or written agreements" and "contain[s] the entire understanding of the parties" with respect to the matters covered by the SPA. SPA § 9(e). The specific terms of the SPA provide that the Funds made no "representations or warranties with respect to the transactions contemplated hereby other than those specifically set forth in Section 2," SPA § 3(a)(xxx), and as such the SPA, after execution, became the exclusive source of potential liability for transactions occurring during the SPA's

---

[1] This transaction is also the subject of two consolidated cases, *Hudson Bay Master Fund Ltd. v. Patriot National, Inc..,* No. 16-cv-2767 (S.D.N.Y.), and *CVI Investments Inc. v. Patriot National, Inc.*, No. 16-cv-2787 (S.D.N.Y.), which are also in front of Judge Daniels in the Southern District of New York and which are currently proceeding towards trial on Hudson Bay's claim of tortious interference against Mariano. Mariano, a defendant in the related cases, asserted the same claims he makes here as counterclaims in those actions. The district court in these cases held against both Mariano's fraudulent inducement and breach of contract counterclaims, the former at the motion to dismiss stage, the latter at summary judgment. As explained below, because the contract unambiguously permits the alleged conduct by the Funds which Mariano relies on to assert a supposed breach of contract, the district court was correct to dismiss Mariano's claims in the present action notwithstanding that it waited until summary judgment to dispose of the breach of contract claims in the related cases. Further, to the extent Mariano's opening brief requests a stay until the completion of the related proceedings, we deny his request.

negotiation. *See Jia v. Intelli-Tec Sec. Servs., Inc.*, 981 N.Y.S.2d 79, 80–81 (1st Dep't 2014) (noting that any prior agreement "would have been superseded pursuant to the [subsequent] agreement's merger clause"). Because the parties elected to supersede the NDA with the SPA and, later, the REA, Mariano cannot now rely on an alleged breach of the NDA to state a cause of action for breach of contract.

Mariano further argues that certain "pre-borrow" and "pay-for-hold" arrangements by the Funds in the lead up to the execution of the SPA constituted a breach of the SPA. Section 2(j) of the SPA bans "transactions" including "Short Sales" in the lead up to the SPA but contains a specific exemption for "the location and/or reservation of borrowable shares of Common Stock." The pre-borrow and pay-for-hold arrangements here were just such "location[s] and[] reservation[s]" of borrowable shares. *See* SPA § 2(j). Under these arrangements, the Funds paid counterparties to ensure that the shares would be available to borrow should the Funds later choose to engage in short sales, sales which were permitted under the SPA after its public disclosure, *see* SPA § 3(a)(xxxii) (stating that "[b]uyers may engage in" "hedging . . . activities" including "purchasing or selling, long and/or short" after the transaction is public).[2] Mariano essentially argues that because the Funds paid to reserve these shares, this payment constituted a prohibited transaction, and not a permitted "location and/or reservation." The plain meaning of reservation, however, clearly encompasses paying to hold something for use as in the case of, e.g., concert tickets. *See Reservation Definition,* Merriam-Webster Online Dictionary, https://www.merriam- webster.com/dictionary/reservation (last visited Apr. 10, 2020) (defining

---

[2] The Funds were not allowed to maintain a "Net Short Position," that is, to bet more against Patriot than on Patriot, during certain periods. *See* SPA § 4(t). However, there is no allegation that the Funds had such a net short position at any time.

4

reservation as "an arrangement to have something . . . held for one's use"). As such, the Funds' sourcing of borrowable shares and paying to keep these shares available was a permitted "location and/or reservation" of shares.

Finally, Mariano is incorrect that the Funds' short sales after the public disclosure of the SPA breached the later-enacted REA by virtue of the REA's bring-down provision, which stated that all representations in the SPA remained true where they did not reference a "specific date." REA § 3(b). The SPA's previously mentioned ban on short sales only persisted until "immediately prior to the execution of this Agreement by such Buyer." SPA § 2(j). As authorized by this provision, the Funds did sell short after execution of the SPA, but, the obvious reading of the SPA clearly authorized those sales as of a specific date: namely, the execution date of the SPA, December 13, 2015. As such, the ban on short selling referenced in the SPA was not encompassed by the REA's bring-down language. The Funds' alleged conduct thus did not breach the REA.

## II.     Fraudulent Inducement

Where a fraud claim is based on inducement to enter a contract, the fraud claim is duplicative unless the plaintiff "(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek[s] special damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 19 (2d Cir. 1996). (citations omitted). Mariano's fraudulent inducement claims here do not sufficiently allege a legal duty separate from the duty to perform under the contracts or demonstrate a misrepresentation collateral or extraneous to these contracts.[3]

---

[3] Mariano does not seek special damages.

As to a separate duty, Mariano argues that the "special facts" doctrine imposed a duty on the Funds to disclose because the Funds knew they were borrowing shares in anticipation of short sales based on their low opinion of Patriot's future prospects. The special facts doctrine requires that (1) the defendant must have failed to disclose a "material fact [that] was information 'peculiarly within [the] knowledge' of [the defendant]" and (2) "that the information was not such that could have been discovered by [the plaintiff] through the 'exercise of ordinary intelligence,'" *Jana L. v. W. 129th St. Realty Corp.*, 802 N.Y.S.2d 132, 135 (1st Dep't 2005) (quoting *Black v. Chittenden*, 69 N.Y.2d 665, 669 (1986)), and the defendant "knows that the other [party] is acting on the basis of [this] mistaken knowledge," *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n,* 731 F.2d 112, 123 (2d Cir. 1984). Mariano cannot allege that the Funds "knew" that he was acting on the basis of mistaken knowledge when the allegedly fraudulent behavior was expressly considered and authorized under the thoroughly negotiated contractual agreements, and the relevant contract contained a provision expressly disclaiming any reliance on oral representations. *See* SPA §§ 2(e), 3(b)(vii); *Danann Realty Co. v. Harris*, 5 N.Y.2d 317, 320–21 (1959) ("[A] specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations."). And, even if the Funds did have a poor opinion regarding Patriot's long-term prospects, that would not give rise to a duty to disclose. *See SSA Holdings LLC v. Kaplan*, 992 N.Y.S.2d 405, 406 (1st Dep't 2014) (holding that a duty to disclose did not arise under the special facts doctrine where "[w]hile there may have been concealment of opinions, there was no concealment of the facts upon which those opinions were based and defendants were not bound to volunteer their opinions" (citation and internal quotation marks omitted)).

Mariano's argument that the Funds misrepresented then-present facts by stating that they were long-term investors and then engaging in pre-execution "stock manipulation" similarly fails. The Funds did not manipulate the stock through their borrowing activity which, as discussed above, was permitted by the SPA. Indeed, the extent to which the Funds could be long-term investors or short-term investors was directly governed by the contract provisions regarding the positions the Funds could take in Patriot stock.

Ultimately, Mariano's fraud claim was properly dismissed because it turns on conduct that was expressly contemplated by the contract and, as illustrated above, the Funds' alleged behavior was perfectly consistent with that contract. Mariano's allegations regarding the "real" intent of the Funds are not enough to defeat that conclusion. *See Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) ("[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract" (internal quotation marks omitted)).

Finally, even apart from the above, Mariano's fraudulent inducement claim also fails because Mariano was a sophisticated investor whose claims are "based on alleged misrepresentations made during negotiations" that are not contained in the final contract. *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007). As such he "cannot establish reasonable reliance on [such] misrepresentation[s]" and his claims "are barred by the merger clauses" contained in the both the SPA and the REA. *Id*.

\*     \*     \*

7

We have considered Mariano's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk