■ BOARD OF MANAGERS OF LOFT SPACE CONDOMINIUM, Appellant, v SDS LEONARD, LLC, Respondent, et al., Defendants. [38 NYS3d 23]—

Order, Supreme Court, New York County (Anil C. Singh, J.), entered April 15, 2015, which granted defendant SDS Leonard, LLC's motion to dismiss the complaint as against it, unanimously modified, on the law, to deny the motion as to (1) so much of the breach of contract claim as is based on (a) items that are hazardous, dangerous, and/or in violation of law and (b) SDS's failure to obtain a permanent certificate of occupancy and (2) so much of the eighth and ninth causes of action as are based on SDS's conveyance of the commercial units at the Loft Space Condominium (the condominium) to LW Retail Associates LLC, and otherwise affirmed, without costs.

Each purchaser of a residential unit at the condominium entered into a contract with SDS, the sponsor of the condominium. The contract incorporated the condominium offering plan by reference. The offering plan states that the "[t]he Common Elements are offered in 'as is' condition as of the date of the First Unit Closing, subject to . . . the Sponsor's [i.e.,

SDS's] obligation to maintain the Property in accordance with the requirements of law and to cause any hazardous or dangerous conditions to be cured."

To the extent the first cause of action, alleging breach of contract against SDS, is based on items that are hazardous, dangerous, and/or violate the law (that is, exceptions to the "as is" clause), the "as is" clause does not bar the claim (*see TIAA Global Invs., LLC v One Astoria Sq. LLC*, 127 AD3d 75, 85-86 [1st Dept 2015]). The temporary certificates of occupancy (TCOs) for the buildings comprising the condominium do not refute plaintiff's claim that hazardous and dangerous conditions existed when SDS sold the residential units. A TCO merely creates a rebuttable presumption that a building complies with New York City law (*see Board of Mgrs. of Olive Park Condominium v Maspeth Props. LLC*, 2014 NY Slip Op 33012[U], *9-10 [Sup Ct, Kings County 2014]; *see also Solomons v Greens at Half Hollow, LLC*, 26 Misc 3d 83, 86 [App Term, 2d Dept, 9th & 10th Jud Dists [2009]). Therefore, it is not the kind of documentary evidence that warrants granting a CPLR 3211 (a) (1) motion (*see e.g. Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]).

The motion court should not have dismissed the breach of contract claim to the extent it alleges that SDS failed to obtain a permanent certificate of occupancy. The offering plan states that the "Sponsor expects to obtain a permanent Certificate of Occupancy . . . within 180 days of the First Unit Closing of a Residential Unit," and the "as is" clause in the plan does not negate this obligation.

The motion court correctly dismissed the fraudulent inducement claim (i.e., the second cause of action) as duplicative of the breach of contract claim (*see e.g. Board of Mgrs. of the Chelsea 19 Condominium v Chelsea 19 Assoc.*, 73 AD3d 581, 581 [1st Dept 2010]).

The seventh cause of action, alleging that certain equity distributions made by SDS violated Debtor and Creditor Law § 273, was correctly dismissed. Plaintiff merely alleged the "legal conclusion[ ]"—not "specific factual allegations" (*NTL Capital, LLC v Right Track Rec., LLC*, 73 AD3d 410, 412 [1st Dept 2010])— that the equity distributions were made without fair consideration. For the same reason, the motion court correctly dismissed the eighth cause of action to the extent it alleges that the equity distributions violated Debtor and Creditor Law § 274.

The motion court should not have dismissed the eighth cause of action to the extent it alleges that SDS's conveyance of four

commercial units at the condominium to LW for $0 violated Debtor and Creditor Law § 274. On its face, $0 for four commercial condominium units does not appear to be "fair consideration" (Debtor and Creditor Law § 274). Moreover, even if SDS established a reserve fund of $623,000, this does not "utterly refute[ ]" (*Goshen*, 98 NY2d at 326) plaintiff's allegation that SDS was left with "unreasonably small capital" (Debtor and Creditor Law § 274). The condominium offering plan, which SDS relied on before the motion court, states that Local Law 70 of 1982 "requires that . . . the Sponsor shall establish *and transfer to the Board of Managers of the Condominium* [i.e., plaintiff], a Reserve Fund" (emphasis added). Thus, this evidence does not show that SDS retained the reserve fund; rather, it shows that the fund was transferred to plaintiff.

The motion court correctly dismissed the ninth cause of action to the extent it alleges that SDS's equity distributions violated Debtor and Creditor Law § 276. However, the court should not have dismissed the cause of action to the extent it alleges that SDS's conveyance of the commercial units violated Debtor and Creditor Law § 276. Plaintiff alleged sufficient "badges of fraud" to support the latter claim, including "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; [and] the transferor's knowledge of the creditor's claim and the inability to pay it" (*Wall St. Assoc. v Brodsky*, 257 AD2d 526, 529 [1st Dept 1999]). In particular, plaintiff alleges that LW is owned and controlled by a defendant related to SDS. Further, as previously noted, $0 for four commercial condominium units appears to be inadequate consideration. As for SDS's knowledge of plaintiff's claim, it is notable that SDS conveyed the units to LW in July 2013, after plaintiff filed its August 2012 summons with notice in the instant case. Concur—Sweeny, J.P., Manzanet-Daniels, Feinman, Kapnick and Webber, JJ.