■ A-Pix, Inc., et al., Respondents-Appellants, v SGE Entertainment Corporation, Appellant-Respondent. Richard T. Karo et al., Counterclaim Defendants-Appellants. [635 NYS2d 638] —Order of the Supreme Court, New York County (Herman Cahn, J.), entered August 26, 1994, which, *inter alia,* granted plaintiffs' motion for partial summary judgment on the second cause of action, is unanimously modified, on the law, to grant defendant partial summary judgment to the extent of declaring that the 20% video royalties are includable in gross receipts, and to grant the motion for summary judgment dismissing defendant's counterclaim, and otherwise affirmed, without costs or disbursements.

Defendant SGE Entertainment Corporation (SGE) entered into a letter agreement to distribute a film, "Forced March", with plaintiff A-Pix, Inc., on November 14, 1988, and after additional negotiations entered into a January 16, 1989 Agreement, setting forth defendant's rights and obligations in distribution of the film. This Agreement which superseded the former letter agreement repeated the promise by SGE to make $750,000 in installment payments and stated: "It is contemplated that the budgeted cost of producing and delivering the Picture hereunder shall be approximately $2,785,000" but noted that if from the date of the agreement, the cost exceeded $750,000 and the plaintiff A-Pix did not provide the excess amount needed to complete the film, SGE would have the right to take over the film, pay the excess amount and A-Pix would be charged a 100% penalty for the excess amount over $750,000

paid by SGE. In an amendment to the Agreement, SGE agreed to advance A-Pix a further $403,983 above the original $750,000.

This action was commenced for breach of contract, seeking an accounting of the proceeds, costs and expenses, as set forth in the Agreement, and a declaratory judgment that SGE no longer has any rights under the Agreement. SGE counterclaimed against plaintiffs and additional counterclaim defendants Richard Atkins and Richard Karo for fraud in inducing it to enter the Agreement.

A prior motion by SGE for summary judgment as to a breach of contract cause of action was granted by the Supreme Court and that order has not been appealed. Thereafter, plaintiffs moved for partial summary judgment on their second cause of action declaring that SGE owes A-Pix monies for video royalties and plaintiffs and additional counterclaim defendants moved for summary judgment dismissing SGE's counterclaim. In the order appealed from, the Supreme Court, *inter alia,* granted plaintiffs' motion for partial summary judgment and denied the motion to dismiss the counterclaim. We find these dispositions were in error and therefore reverse as to them.

Paragraph 4 of the Agreement defines "Gross Receipts" as follows:

"For all purposes of this Agreement, 'Gross Receipts' shall equal all monies (including, without limitation, advances and guarantees) which are received by SGE or any affiliated distribution company of SGE in United States Dollars in the United States from the exercise of any of the rights granted to SGE hereunder and which are not subject to forfeiture or return. Notwithstanding the foregoing, however:

"a) If SGE shall distribute home video rights by means of a company affiliated with SGE or directly by SGE, SGE shall pay a royalty of twenty (20%) percent of the wholesale price of video cassettes and video discs sold, as accounted and paid to SGE, and if SGE shall distribute home video rights by means of a third-party sub-distributor then Gross Receipts shall mean all sums actually received by SGE including nonreturnable advances from home video distribution.

"b) Receipts from the exploitation of theatrical remake and sequel and television program and series rights shall not be included in Gross Receipts hereunder."

According to the IAS Court's interpretation, video royalties are part of Gross Receipts only when distribution is not directly by SGE or a company affiliated with SGE, and although the

Agreement is silent on the issue, the court found that royalties generated by direct distribution of videos by SGE or an affiliate of SGE are immediately payable to A-Pix. This interpretation is contrary to the plain meaning of the contractual provision read as a whole.

Obviously, if distribution is by a third party unaffiliated with SGE, *all* sums received, minus expenses and costs in the manufacture and distribution, will represent net revenues and would be payable *in toto* into gross receipts. With videos distributed directly by SGE or an affiliate of SGE, the monies received by SGE will *include* expenses and costs in the manufacture and distribution. Thus, the provision in this latter case is for 20% of the monies received to be paid as royalties. It can be seen from the context of the paragraph that these royalties, while not expressly stated, are payable into gross receipts. The dichotomy expressed in the subdivision is between SGE-distributed videos and third-party distributed videos. In the former, 20% of the amounts received are payable into gross receipts and in the latter, *all* of the amounts received are payable into gross receipts, but, consistent with the intent of the paragraph, all revenues generated by the home video distribution are included in gross receipts. To conclude that revenues generated by unaffiliated distribution would be included in gross receipts but that revenues from affiliated distribution would not be included is illogical. This conclusion is strengthened by the *express* exclusion of receipts from theatrical remakes and sequel and television program and series rights from "Gross Receipts", in subdivision (b) of paragraph 4, set forth above. If the parties had intended to exclude royalties or net revenues received from direct distribution of videos by SGE, they would have used the express language of exclusion as they did in that subdivision (b) which immediately follows (a) in issue herein.

The IAS Court also should have granted the motion to dismiss the defendant's counterclaim for fraud. While the defendant asserts that representations were made that the film would not cost more than $750,000 to complete (in addition to the amounts already committed) and these statements were known to be false at the time they were made, the specific provisions of the Agreements controvert the assertion by the defendant that it relied upon the statements in entering the contracts. The contracts *specifically* contemplated and addressed cost overruns. The letter agreement and the Agreement specifically recognized SGE's right to fund such cost overruns and take over control of the film, in the event A-Pix failed

to advance such funds (*see,* provision cited, *supra*). "Thus, the contract's express terms contradict the defendant's allegations that he executed the contract in reliance upon the particular oral misrepresentations" (*LaBarbera v Marino,* 192 AD2d 697, 698). Further, the Agreement contains a merger clause which prohibits any modification unless in writing and executed by both parties. Concur—Sullivan, J. P., Rosenberger, Wallach, Ross and Asch, JJ.