■ GUSTAVO PERROTTI, Appellant, v BECKER, GLYNN, MELAMED & MUFFLY LLP, et al., Respondents, et al., Defendants. [918 NYS2d 423]—

Plaintiff and defendants Garcia and Lobato jointly owned several investment advisory businesses incorporated in the Cayman Islands. In May 2006, the parties entered into a stock buyout and consulting agreement (SBCA), in which Garcia and Lobato agreed to purchase plaintiff's shares in the entities for a total of $70,000. The agreement further provided that Linda Macarena (Macarena), a Panamanian company owned by plaintiff, would provide consulting services to two of the entities subject to the stock sale as well as a third entity, and that those companies would pay Macarena $2,088,000 in the aggregate.

Contemporaneous with the execution of the SBCA, plaintiff, Macarena, Garcia, Lobato and defendant Becker, Glynn, Melamed & Muffly LLP (BGMM), a law firm, executed a stock pledge and escrow agreement. Richard N. Chassin, a partner of BGMM, signed that agreement on behalf of the firm. Pursuant to that instrument, Garcia and Lobato agreed to deliver, and BGMM agreed, as escrow agent, to hold, "duly executed share transfer forms representing all of the shares" of the entities which plaintiff had agreed to sell to Garcia and Lobato.

Garcia and Lobato made all required payments for plaintiff's shares of stock. However, in January 2007, the entities which were required by the SBCA to make payments to Macarena for consulting services went into voluntary liquidation in the Cayman Islands, and stopped making the payments.

Plaintiff filed a complaint alleging that Garcia, Lobato, and the three entities which were subject to the consulting provi-

sions of the SBCA, had breached the SBCA. He claimed that Garcia and Lobato had individually agreed to pay him (personally and as assignee of Macarena) $2,155,750 for his shares in the three advisory firms. He did not explain in the complaint how he reached this figure, where the SBCA clearly stated that the purchase price was only $70,000. The complaint also named two additional entities which plaintiff alleged were successors in interest to two of the entities that were party to the SBCA. Plaintiff alleged that Garcia and Lobato "each personally used the five defendant corporations as an 'alter ego,' and dominated and controlled the corporations for their own benefit, so that the corporate 'veil' should be pierced."

The complaint also asserted a cause of action against BGMM and Chassin, both denominated as "escrow agent." Plaintiff alleged that those defendants violated the stock pledge and escrow agreement "by failing to maintain for plaintiff's security, the subject stock and/or indicia of stock ownership." He further claimed that the conduct of BGMM and Chassin "constituted 'bad faith' and 'gross negligence' on their part," and compelled judgment against them for the balance of amounts due plaintiff under the SBCA.

BGMM and Chassin moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint as against them. In support of the motion, Chassin submitted an affirmation in which he asserted that "BGMM, as escrow agent continues to retain each of the three pledged share transfer forms in escrow in accordance with the terms of the Stock Pledge and Escrow Agreement." Garcia and Lobato separately moved to dismiss. They argued that nothing in the SBCA required Garcia and Lobato to pay plaintiff anything more than $70,000 for his shares of stock in the advisory firms, and that they were current on those payments.

Plaintiff cross-moved to amend his complaint. His proposed amended complaint contained several factual allegations which were absent from the original complaint. Specifically, plaintiff alleged that he originally entered into an oral agreement with Garcia and Lobato, pursuant to which he agreed to sell them his shares in the advisory firms for $2,125,000, and that an attorney representing Garcia and Lobato prepared a writing memorializing that arrangement. Plaintiff further asserted that, after he reviewed the document, but before it was executed, Garcia and Lobato proposed to him that the payment terms be restructured so that a substantial percentage of the stock purchase price would be characterized as consulting fees. This change, they allegedly assured plaintiff, was for tax planning purposes and would have no effect on plaintiff's ability to collect

the agreed amount of $2,125,000. Plaintiff asserted that Garcia and Lobato further represented to him that additional changes, such as placing the obligation to pay the "consulting fees" on two of the advisory firms and a new, third entity, as well as designating an entity controlled by plaintiff, but not plaintiff himself, as the recipient of the "consulting fees," were for the "internal benefit" of Garcia and Lobato and would have no adverse impact on plaintiff. Indeed, plaintiff claimed that Garcia and Lobato's internal accounting records demonstrated that they characterized all payments as being for the stock purchase, and that they made all payments to him in his individual capacity, not to Macarena.

The proposed pleading asserted a claim for fraudulent inducement against Garcia and Lobato, based on these new allegations. It contained the same cause of action against BGMM and Chassin as in the original complaint. Finally, the new pleading sought recovery from only one of the five entities named in the original complaint, Southport Capital Alternative Investments Ltd. Plaintiff alleged that Southport Capital was the successor-in-interest to Swiss Cayman Capital, one of the firms which was party to the SBCA. He further asserted that Southport Capital was liable to him because "Garcia and Lobato each personally dominated and controlled Swiss Cayman Capital, and caused Southport Capital to be its successor in interest." Plaintiff further relied on a provision of the SBCA which makes all its obligations binding on corporate successors.

The IAS court granted defendants' motions to dismiss and denied plaintiff's cross motion to amend. With respect to BGMM, the court observed that the stock pledge and escrow agreement was clear and unambiguous. As such, it stated that it was required to enforce it in accordance with its plain meaning. Since the agreement merely required BGMM to hold the "share transfer forms" for the stock in the three advisory firms, and not the shares themselves, the court held that BGMM could not be held liable for retaining the former and not the latter. The court further held that the claim against Chassin had no merit, since he signed on behalf of BGMM and did not express any intent to be personally liable as an escrow agent. The court dismissed the breach of contract claim. It held that the SBCA placed no personal obligation on Garcia and Lobato to pay consulting fees to plaintiff, because any such obligation was reserved to the various entities. The court further found that plaintiff had not made sufficient factual allegations to pierce the corporate veil.

The IAS court also refused to grant plaintiff leave to amend

the complaint. It held that the executed SBCA rendered unviable the fraud claim against Garcia and Lobato. This was because that agreement "meaningfully contradicted" the oral misrepresentations upon which plaintiff claimed to have relied. The court found lacking in merit the claim against Southport Capital, stating that plaintiff's attempt to pierce the corporate veil remained "completely unsubstantiated."

On this appeal, plaintiff focuses only on his proposed amended complaint. In doing so, he urges this Court to put aside any questions it may have regarding the merits of his proposed amended complaint, and give him leave to replead as required by CPLR 3025 (b).

It is true that on a motion for leave to amend a pleading, the movant "need not establish the merit of its proposed new allegations, but [must] simply show that the proffered amendment is not palpably insufficient or clearly devoid of merit" (*MBIA Ins. Corp. v Greystone & Co., Inc.*, 74 AD3d 499, 500 [2010] [citations omitted]). However, plaintiff has failed to make such a showing.

Plaintiff's proposed fraudulent inducement claim is not supported by the factual allegations contained therein. For such a cause of action to be viable, it must be demonstrated that there was a false representation, made for the purpose of inducing another to act on it, and that the party to whom the representation was made justifiably relied on it and was damaged (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]). Here, plaintiff alleges that Garcia and Lobato misrepresented to him their true intentions in redrafting the SBCA. However, under any interpretation of the proposed pleading, it is impossible to conclude that plaintiff, a sophisticated investor, reasonably relied on Garcia's and Lobato's alleged representations. He asserts that they told him that the changes to the agreement were "for their own internal benefit and tax advantage" and that the "rewording would benefit them without in any way prejudicing plaintiff." Even if it is true that Garcia and Lobato made such representations, plaintiff fails to explain how he acted reasonably when he executed a writing which, on its face, contradicted those representations and was *highly* prejudicial to him as it relieved Garcia and Lobato of personal liability for all but a small percentage of the total amount due thereunder. This Court has repeatedly held that a party claiming fraudulent inducement cannot be said to have justifiably relied on a representation when that very representation is negated by the terms of a contract executed by the allegedly defrauded party (*see National Union Fire Ins. Co. of Pittsburgh, Pa. v Xerox Corp.*,

25 AD3d 309, 310 [2006], *lv dismissed* 7 NY3d 886 [2006]; *Daily News v Rockwell Intl. Corp.*, 256 AD2d 13, 14 [1998], *lv denied* 93 NY2d 803 [1999]; *A-Pix, Inc. v SGE Entertainment Corp.*, 222 AD2d 387, 389 [1995]).

The documentary evidence submitted by plaintiff on his cross motion is insufficient to support the proposed cause of action for fraudulent inducement. This evidence purportedly demonstrates that, after the SBCA was executed, Garcia and Lobato behaved in a fashion that suggests they were honoring the original oral agreement. However, Garcia and Lobato counter with ample documentary evidence, completely unrebutted by plaintiff, that negates the import of plaintiff's documents and demonstrates that the conduct pointed to by plaintiff was actually consistent with the SBCA. Accordingly, plaintiff's proposed cause of action for fraudulent inducement is "palpably insufficient [and] clearly devoid of merit" (*MBIA Ins. Corp.*, 74 AD3d at 500).

The IAS court properly dismissed the cause of action against BGMM and Chassin. The stock pledge and escrow agreement expressly required BGMM to maintain only "share transfer forms," and not share certificates or any other indicia of stock ownership. Thus, this case differs from *Corhill Corp. v S.D. Plants, Inc.* (9 NY2d 595 [1961]) and *Matter of Lipper Holdings v Trident Holdings* (1 AD3d 170 [2003]), the cases relied on by plaintiff. In those matters, the contract language in question was open to divergent interpretations. Here, the term "share transfer form" is specific, well-defined, and incapable of being interpreted in more than one way. Therefore, we reject plaintiff's allegation that BGMM breached a duty by failing to maintain actual share certificates or other indicia of stock ownership. Plaintiff's claim against Chassin, a Becker Glynn partner, fails for the additional reason that Chassin, although a signatory on behalf of his firm, was not a party to the stock pledge and escrow agreement. Plaintiff does not allege that Chassin was personally negligent and offers no other reason why Chassin should be held individually responsible for the alleged failure by his law firm.

Finally, plaintiff was properly denied leave to amend his complaint to assert a successor liability cause of action against defendant Southport Capital Alternative Investments Ltd. Plaintiff was not in contractual privity with Southport's predecessor, only Macarena was. Accordingly, only Macarena would have standing to assert a claim against Southport. Concur—Mazzarelli, J.P., Friedman, McGuire, Renwick and Richter, JJ.