■ Federal-Mogul Corporation et al., Appellants-Respondents, v UTi, United States, Inc., Respondent-Appellant. [45 NYS3d 401]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered July 1, 2015, which, insofar as appealed from as limited by the briefs, granted defendant's motion for summary judgment dismissing the complaint to the extent of limiting plaintiffs' cover damages to those incurred between May 13 and 18, 2010, and dismissing plaintiffs' request for attorneys' fees, and denied the motion as to dismissing plaintiff WestPoint Homes LLC formerly known as WestPoint Homes, Inc.'s (WP) contract claim in its entirety, and denied plaintiffs' motion for leave to file a second amended complaint, unanimously modified, on the law, to clarify that plaintiffs' claimed cover damages incurred between May 13 and 18 may only be awarded in the event it is found that plaintiffs did not first materially breach the contracts, so that defendant's May 13 letter constituted a repudiation of the parties' contracts, and otherwise affirmed, without costs. Order, same court and Justice, entered July 17, 2015, which denied plaintiffs' motion to add a contract claim for certain fuel surcharges, unanimously affirmed, without costs.

Defendant contends that its May 13 letter did not repudiate the contracts because its July 22, 2009 letter reserved the right to further negotiate the contracts or rescind them if plaintiffs did not award it all of their business. This argument is unavailing. While the July 22 letter constituted defendant's counteroffer (see *Homayouni v Banque Paribas*, 241 AD2d 375 [1st Dept 1997]), Hunter Gary of Icahn Sourcing (plaintiffs' affiliate) had a conversation with Chris Dale and Gene Ochi of defendant that in essence constituted plaintiffs' counteroffer to defendant's counteroffer. Gary told Dale and Ochi that it was a condition of plaintiffs' countersigning the contracts that defendant's letter "disappear," and Dale and/or Ochi said he/they understood. Since Gary's offer was the last in time, it is the operative one. The conversation was not a prohibited oral modification because it occurred *before* plaintiffs countersigned the contracts.

Next, defendant contends that plaintiffs were the first to breach the contracts, by failing to negotiate fuel costs in good faith, and that therefore it was entitled to send its May 13 letter. However, there is conflicting evidence as to whether plaintiffs and/or Icahn Sourcing failed to negotiate in good faith. Moreover, even if, arguendo, plaintiffs breached first, there is an issue of fact as to whether their breach was material, entitling defendant to breach (i.e., send its May 13 letter)

(*see e.g. N450JE LLC v Priority 1 Aviation, Inc.*, 102 AD3d 631 [1st Dept 2013]).

If the finder of fact concludes either that plaintiffs negotiated in good faith or that they failed to negotiate in good faith but this was not a material breach, then defendant's May 13 letter constitutes a repudiation (*see Created Gemstones v Union Carbide Corp.*, 47 NY2d 250, 255 n 5 [1979]) and an anticipatory breach (*see Rachmani Corp. v 9 E. 96th St. Apt. Corp.*, 211 AD2d 262, 267 [1st Dept 1995]).

The motion court thus erred in finding as a matter of law that defendant's May 13 letter was a repudiation. It also erred in finding that defendant retracted its repudiation on May 18, 2010 (*see e.g. Beinstein v Navani*, 131 AD3d 401, 406 [1st Dept 2015]). However, the court correctly concluded that plaintiffs' cover damages (if any) must be limited to those incurred between May 13 and 18. If defendant unjustifiably refused to ship their goods, then plaintiffs had to find alternative means of transport, and they are entitled to the difference between the higher price charged by other freight forwarders and the lower price in the contracts between the parties. However, even if the issue of a prior breach by plaintiffs is resolved in their favor, plaintiffs will not be entitled to cover damages arising from their use of alternative means of transport after May 18, 2010. The parties entered into an in-court stipulation on that date whereby defendant agreed to resume shipping immediately if plaintiffs paid the higher fees mentioned in its May 13 letter, with plaintiffs reserving their rights. Thus, after May 18, plaintiffs' decision to use other freight forwarders could no longer be based on defendant's breach, i.e., its refusal to ship their goods (*see Pesa v Yoma Dev. Group, Inc.*, 18 NY3d 527, 532 [2012]).

Assuming, arguendo, that plaintiffs preserved their argument about attorneys' fees, which they make only in a footnote, it is unavailing. Like the indemnification provision in *Hooper Assoc. v AGS Computers* (74 NY2d 487 [1989]), section 30 of the subject contracts contemplates third-party claims, not claims between the parties.

Defendant contends that the court should have dismissed WP's contract claim entirely because WP did not pay all of defendant's invoices. However, while WP's own performance under the contract is an element of its breach of contract claim (*Dorfman v American Student Assistance*, 104 AD3d 474, 474 [1st Dept 2013]), there are triable issues of fact as to WP's obligation to pay. The contract requires WP to pay within 45 days after receipt of a *correct* invoice; defendant's own emails

show that it sent incorrect invoices and at least one duplicate invoice and that some invoices were missing.

The court properly denied plaintiffs' motions to add claims that defendant fraudulently induced them into amending the contracts and breached the amendments by improperly calculating certain fuel surcharges (*see Perrotti v Becker, Glynn, Melamed & Muffly LLP*, 82 AD3d 495, 498 [1st Dept 2011]). To be viable, a fraudulent inducement claim must demonstrate justifiable reliance on the false representation (*id.*). By the time plaintiffs entered into the amendments in the summer of 2010, they had already sued defendant. Moreover, plaintiffs are sophisticated entities (*see e.g. Shea v Hambros PLC*, 244 AD3d 39, 47 [1st Dept 1998]). Unlike the situation in *DDJ Mgt., LLC v Rhone Group L.L.C.* (15 NY3d 147 [2010]) and *CIFG Assur. N. Am., Inc. v Goldman, Sachs & Co.* (106 AD3d 437 [1st Dept 2013]), plaintiffs did not obtain representations and warranties that defendant's statements (the ones plaintiffs now claim they relied on) were true. Indeed, plaintiffs knew they were not getting all the documents they wanted from defendant, and yet they did not condition the amendments upon an inspection of its books and records (*see e.g. Rodas v Manitaras*, 159 AD2d 341 [1st Dept 1990]).

Contrary to plaintiffs' contention, the amended complaint does not give defendant notice that plaintiffs are seeking fuel overcharges; hence, the court properly required plaintiffs to add a specific claim for such overcharges. It then properly denied the motion to amend. Reading subsections 37.2 and 37.3 of the contracts together, giving them a reasonable commercial construction, and taking into account defendant's conduct regarding documents, we deem plaintiffs' deadline for giving defendant notice to be 90 days from when they discovered that it might have overcharged them for fuel, i.e., 90 days from November 19, 2014. Plaintiffs missed that deadline. While they moved in January 2015 to add a claim for *fraudulent inducement*, they said in their reply brief on that motion that they were "not claiming that [defendant] failed to perform its obligations under the BAF Amendments." In other words, far from giving notice of a fuel overcharge, plaintiffs specifically disclaimed a contract claim for such overcharges. Concur—Renwick, J.P., Saxe, Gische and Webber, JJ. ■