MREF REIT Lender 2 LLC v FPG Maiden Holdings LLC (2024 NY Slip Op 06161)

MREF REIT Lender 2 LLC v FPG Maiden Holdings LLC

2024 NY Slip Op 06161

Decided on December 10, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 10, 2024

Before: Renwick, P.J., Friedman, Shulman, Pitt-Burke, Rosado, JJ. 

Index No. 653189/22 Appeal No. 3222 Case No. 2023-04755 

[*1]MREF REIT Lender 2 LLC et al., Plaintiffs-Respondents-Appellants,
v
FPG Maiden Holdings LLC et al., Defendants-Appellants-Respondents.

Cohen Tauber Spievack & Wagner P.C., New York (Sari E. Kolatch of counsel), for FPG Maiden Holdings, LLC, Fortis Property Group, LLC, FPG Maiden Lane, LLC, and Joel Kestenbaum, appellants-respondents.
Thompson Coburn LLP, New York (Steven J. Mandelsberg of counsel), for Bank Leumi USA, Valley National Bank, Bank Leumi Le-Israel BM and Harel-Maiden Lane-General Partnership, appellants-respondents.
Fried, Frank, Harris, Shriver & Jacobson LLP, New York (Emilie Cooper of counsel), for respondents-appellants.

Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered on or about August 24, 2023, which, to the extent appealed from as limited by the briefs, denied in part and granted in part the motion to dismiss of defendants Bank Leumi USA, Valley National Bank, as successor-by-merger to Bank Leumi USA (together, BLUSA), Harel-Maiden Lane General Partnership and Bank Leumi Le-Israel BM (BLITA, and together with BLUSA and Harel-Maiden Lane, the Senior Lenders or the Senior Lender Defendants) (Motion Seq. 001); and denied in part the motion to dismiss of defendants FPG Maiden Holdings, LLC (the Mezzanine Borrower), Fortis Property Group, LLC (FPG), FPG Maiden Lane, LLC (the Senior Borrower), and Joel Kestenbaum (collectively, the Borrower Defendants) (Motion Seq. 003), unanimously modified, on the law, to (1) dismiss the cause of action as against defendants FPG, the Senior Borrower, and Kestenbaum for fraudulent inducement of the original mezzanine loan agreement (the first cause of action); (2) dismiss the cause of action against BLUSA for breach of the intercreditor agreement (the ICA) (the seventh cause of action), but only to the limited extent that the cause of action relates to an express or implicit obligation to continue funding the senior loans; (3) reinstate the cause of action for aiding and abetting fraud (the fourth cause of action) as against BLUSA; and (4) dismiss the cause of action for unjust enrichment (the tenth cause of action) as against all the Senior Lender Defendants, including BLITA, and otherwise affirmed, without costs.
The Borrower Defendants are the owners and developers of a real estate development project located at 161 Maiden Lane in Manhattan (One Seaport, or the building), a luxury residential tower. The Senior Lender Defendants are banking entities that agreed to extend up to $120 million in senior loans to the Borrower Defendants for the One Seaport project in February 2015, as well as a mezzanine loan in the amount of $30 million in May 2016, which were secured by mortgages on the property (the Senior Loans). BLUSA served as the Administrative Agent with respect to the Senior Loans.
Plaintiff MREF REIT Lender 2 LLC (the Mezzanine Lender) is a commercial lender that extended a separate mezzanine loan to the Borrower Defendants in the amount of $66 million in September 2018, after structural issues, delays, and cost overruns caused a shortfall on the One Seaport project (the Mezzanine Loan). Plaintiff MREF REIT Lender 14 LLC (the Amity Lender), an affiliate of the Mezzanine Lender, extended an additional $40 million in equity to the Borrower Defendants in connection with the One Seaport project in March 2020 following further liquidity shortfalls (the Amity Loan).
Claims Against the Borrower Defendants
Supreme Court properly allowed the cause of action against the Mezzanine Borrower for breach of the representations and warranties in the Mezzanine Loan Agreement (the second cause of action) to [*2]proceed. The Mezzanine Loan Agreement incorporated representations and warranties that had been in the Senior Loan Documents between the Borrower Defendants and the Senior Lenders, including that the Mezzanine Borrower was not aware of structural defects, that the building did not encroach upon adjoining land, and that there was no default or event that would give rise to a default under the Senior Loan Documents. The parties do not dispute that these statements were false at the time that they were made, and that the Mezzanine Borrower knew them to be false.
Rather than contest the falsity of the representations and warranties, the Mezzanine Borrower asks this Court to dismiss the claim based on subsequent amendments to the Mezzanine Loan Agreements, because, in its view, the language of the amendments constituted a waiver of the Mezzanine Borrower's prior breaches, and the amendments generally precluded the Mezzanine Lender from claiming that the original Mezzanine Loan Agreement was breached. These arguments are unpersuasive.
On a motion to dismiss based on documentary evidence (here, the amendments to the Mezzanine Loan Agreement), a waiver will preclude a claim for breach of contract only where it utterly refutes the factual allegations of the complaint and conclusively establishes a defense to the claims as a matter of law (see e.g. Interstate Indem. Co. v East 77 Owners Co., LLC, 224 AD3d 456 [1st Dept 2024]). Supreme Court properly found ambiguity regarding the scope of the amendments, and the ambiguity cannot be resolved on a motion to dismiss (see Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y., 61 NY2d 442, 446, 448 [1984]).
Supreme Court also properly allowed the cause of action for fraudulent inducement against the Mezzanine Borrower to proceed (the first cause of action). However, based on the exculpatory clause, the court should have dismissed the claim with respect to the other borrower defendants — that is, FPG, the Senior Borrower, and Kestenbaum — as the exculpatory clause in the Mezzanine Loan Agreement unambiguously precludes the Mezzanine Lender from pursuing remedies from any of the Borrower Defendants other than the Mezzanine Borrower. The fraudulent inducement claim against the Mezzanine Borrower is largely based on numerous extra-contractual representations made by the Mezzanine Borrower's CEO during due diligence to purportedly induce the Mezzanine Loan. Plaintiffs have sufficiently pleaded the source of the misrepresentations, the content of the misrepresentations, the context in which the misrepresentations were made, and the entity to whom the misrepresentations were made (see e.g. Epiphany Cnty. Nursery Sch. v Levey, 171 AD3d 1, 9 [1st Dept 2019]). Thus, the Mezzanine Borrower cannot credibly claim that it does not understand the basis for the fraud claim (see e.g. MBIA Ins. Corp. v Countrywide Home Loans, Inc., 87 AD3d 287, 295 [1st Dept 2011]).
Furthermore, the extent and adequacy [*3]of plaintiff's due diligence presents a factual issue that could not be resolved on the pleadings, particularly since the complaint alleges that the facts misrepresented by the Borrower Defendants were peculiarly within their knowledge (see e.g. China Dev. Indus. Bank v Morgan Stanley & Co., 86 AD3d 435, 436 [1st Dept 2011]; see also TIAA Glob. Invs., LLC v One Astoria Square LLC, 127 AD3d 75, 89 [1st Dept 2015]). Because a warranty in an agreement is a "statement of present fact . . . a fraud claim can be based on breach of contractual warranties notwithstanding the existence of a breach of contract claim" (First Bank of Ams. v Motor Car Funding, Inc., 257 AD2d 287, 292 [1st Dept 1999]).
For these same reasons, Supreme Court also properly allowed the cause of action for breach of the recourse guaranty agreement against defendant Kestenbaum (third cause of action) to go forward.
Claims against the Senior Lender Defendants
 Although Supreme Court properly allowed a portion of the cause of action for breach of the relevant ICA (seventh cause of action) against BLUSA to go forward, the majority of that cause of action should have been dismissed.
The complaint alleges that BLUSA breached the ICA with the Mezzanine Lender in three ways: first, by failing to fund advances under the Senior Loan, despite promising to do so in connection with the Senior Loan Documents; second, by breaching the implied covenant of good faith and fair dealing of the ICA in not funding the Senior Loan; and third, by violating a representation in the representations and warranties of the ICA that there was no default or event that, with notice and passage of time, could have become a default. Although Supreme Court properly allowed the seventh cause of action to proceed to the extent it related to a breach of the representations and warranties found in the ICA, it should have dismissed the claim to the extent it was premised on the Senior Lender Defendants' failure to fund the Senior Loans.
To state a viable breach of contract claim against BLUSA under this theory, the Mezzanine Lender was required to plead, among other things, a contractual obligation under the ICA and BLUSA's breach of that contractual obligation (see 34-06 73, LLC v Seneca Ins. Co., 39 NY3d 44, 52 [2022]). The ICA does not contain any provision that would impose on BLUSA an obligation to fund the Senior Loan, which is controlled by documents to which the Mezzanine Lender was not a party. Indeed, the general purpose of an intercreditor agreement is not to create funding obligations or a guaranty, but rather to reconcile the priority of the liens granted by the borrower to the parties (see e.g. Steinway Cap. Mgt. II LP v Ironshore Specialty Ins. Co., 126 AD3d 522, 522 [1st Dept 2015]). Thus, BLUSA's failure to fund the Senior Loan was not a breach of the ICA.
Plaintiff's next theory — that BLUSA breached the implied covenant of good faith and fair dealing by not [*4]funding the Senior Loan following the third amendment to the Senior Loan — fails for the same reason that its second theory fails: the ICA does not impose on BLUSA any contractual obligation to fund the Senior Loan (see Mark Patterson, Inc. v Bowie, 237 AD2d 184, 186 [1st Dept 1997]).
The cause of action for unjust enrichment against all Senior Lender Defendants, including BLITA should also have been dismissed. New York law is clear that the "existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter" (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388-389 [1987]). The law is also well-settled that an unjust enrichment claim cannot survive when there is an "agreement[] governing the subject matter" in dispute, even when there is an "absence of a contract between [the plaintiff] and defendant" (Crestview SPV, LLC v Crestview Fin., LLC, 217 AD3d 473, 474 [1st Dept 2023]). Thus, that BLITA (or any other party) was not a party to the agreement covering the Amity Loan was not a proper basis for allowing the unjust enrichment claim to proceed.
However, Supreme Court improperly dismissed the cause of action for aiding and abetting the fraudulent inducement of the Mezzanine Loan Agreement against BLUSA. Plaintiffs contend that they have sufficiently alleged the aiding and abetting fraud cause of action against BLUSA by alleging that (1) the Borrower Defendants defrauded the Mezzanine Lender into entering the Mezzanine Loan (i.e., the underlying fraud); (2) BLUSA provided substantial assistance to the underlying fraud through the misrepresentations in the ICA that there were no structural issues with the Building; and (3) BLUSA concealed and failed to disclose the existence of the structural issues at One Seaport when BLUSA knew that Mezzanine Lender was unaware of them. Giving plaintiffs the benefit of every inference, they have sufficiently pleaded the elements of an underlying fraud against the Borrower Defendants (for the same reasons as explained above), as well as substantial assistance and actual knowledge (William Doyle Galleries, Inc. v Stettner, 167 AD3d 501, 505 [1st Dept 2018]).
Supreme Court's only articulated bases for dismissal of the fraud claims, all of which were plainly targeted at the justifiable reliance element of a standard fraud claim, do not pertain to an aiding and abetting claim. There is no requirement to plead or to prove justifiable reliance in connection with an aiding and abetting claim, so long as there is an underlying cause of action for fraud against another party (id.).
However, Supreme Court properly dismissed the cause of action for fraudulent inducement of the Intercreditor Agreement against BLUSA (the fifth cause of action). Plaintiffs contend that BLUSA's affirmative misrepresentations and material omissions fraudulently induced the [*5]Mezzanine Lender to enter into the ICA and, as a result, to extend the $66 million Mezzanine Loan to the Borrowers in September 2018. However, as noted above, the purpose of the ICA was to "reconcile the priority of the liens granted by the borrower to the parties," not to create independent funding obligations (see e.g. Steinway Capital Mgt. II L.P. v Ironshore Specialty Ins. Co., 126 AD3d 522, 522 [1st Dept 2015]). Thus, even assuming that the Mezzanine Lender was wrongly induced into entering the ICA, it would not have directly resulted in the Mezzanine Lender extending the Mezzanine Loan.
Finally, Supreme Court properly dismissed the Amity Lender's cause of action for the fraudulent inducement of the Amity Loan (the sixth cause of action). While the Amity Lender contends that it would not have loaned money to the Borrower Defendants if it had known that BLUSA would enforce project deadlines and decline to fund, Mezzanine Lender signed a written agreement — the Second Amended Intercreditor Agreement — which expressly consented to the deadlines set forth in the Senior Loan Documents. As this Court previously held in a related action, a party "cannot be said to have justifiably relied on a representation when that very representation is negated by the terms of a contract executed by the allegedly defrauded party" (FPG Maiden Lane, LLC v Bank Leumi USA, 211 AD3d 528, 529 [1st Dept 2022]; see also Perrotti v Becker, Glynn, Melamed & Muffly LLP, 82 AD3d 495, 498-499 [1st Dept 2011]). This cause of action is also subject to dismissal because it fails to allege any affirmative representation by BLUSA that was made directly to plaintiffs regarding an alleged promise not to enforce the project deadlines.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 10, 2024